ROY WILLIAM MILLS,       )
      )
        **Petitioner,**       )
      )
**v.**       )       **Case No. 15-CV-0206-CVE-PJC**
      )
**RAYMOND BYRD, Warden,**[1]       )
      )
        **Respondent.**       )

## OPINION AND ORDER

Now before the Court is the petitioner's 28 U.S.C. § 2254 habeas corpus petition (Dkt. # 1). For the reasons below, the petition will be denied.

## I.

On November 8, 2010, Roy William Mills (petitioner) was charged with using a vehicle to discharge a weapon in violation of Okal. Stat. tit. 21, § 652(B). See Dkt. # 13-4 at 3. Glenn Davis, the regional contractor for the Oklahoma Indigent Defense System (OIDS), was appointed as counsel. Id. at 28; see also Dkt. # 13-1 at 125. The case was later assigned to attorney Burl Estes. See Dkt. # 13-1 at 128. Estes previously represented Danny Schroeder, a co-defendant in the shooting incident, during his plea negotiations with the state. Id. at 116. However, Estes did not perceive a conflict of interest because he understood that Schroeder would not testify at petitioner's trial. Id. at 120.

---

[1]   Petitioner is currently incarcerated at Cimarron Correctional Facility (CCF) in Cushing, Oklahoma. See Dkt. # 1. Raymond Byrd, CCF's warden, is therefore substituted in place of Robert Patton as party respondent. See Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts. The Clerk of Court shall note the substitution on the record.

The trial commenced on January 25, 2011 in Osage County District Court. <u>See</u> Dkt. # 13-4 at 73. After voir dire but before the trial began, the state court ruled that Schroeder could testify as a late-endorsed witness. <u>Id.</u> at 74; <u>see</u> <u>also</u> Dkt. # 13-1 at 124. Estes raised the potential conflict, although he did not personally believe any conflict prevented him from representing petitioner. <u>See</u> Dkt. # 13-1 at 124, 130. After consulting with OIDS contractor Davis, who was also present in the courtroom, petitioner elected to waive any conflict and proceed with the trial. <u>Id.</u> at 126-31. The state court questioned petitioner, determined the decision was knowing and voluntary, and approved the waiver. <u>Id.</u>

The trial evidence consisted of testimony from the officers and investigators, victims Kevin and Teri Lynn Surrett, and Schroeder. Kevin Surrett testified that, on the night of the incident, he was in the kitchen and heard a series of rapid gunshots outside. <u>See</u> Dkt. # 13-1 at 165. When he glanced through the window, he saw a blue SUV turning the corner on his street. <u>Id.</u> The Surretts reported the incident to police and disclosed that an unidentified neighbor witnessed petitioner and Jones shooting at the residence while Schroeder drove the SUV. <u>Id.</u> at 157-58. The investigating officers discovered an empty shell casing in Schroeder's car and the relevant guns at a residence belonging to Jones' brother. <u>Id.</u> at 152-54, 159.

The jury convicted petitioner of using a vehicle to discharge a weapon. <u>See</u> Dkt. # 13-4 at 95. On March 25, 2011, the state court sentenced petitioner to 50 years imprisonment. <u>Id.</u> at 121. Petitioner filed a direct appeal with the Oklahoma Court of Criminal Appeals (OCCA), asserting seven propositions of error. <u>See</u> Dkt. # 12-1 at 2-3. By a summary opinion entered March 25, 2013, the OCCA affirmed. <u>See</u> Dkt. # 12-4. Petitioner then filed an application for post-conviction relief

in state court, which was denied.  See Dkt. # 12-5 and 12-6.  Petitioner filed the instant federal § 2254 petition (Dkt. # 1) on April 22, 2015.  He raises four grounds for relief:

> Ground I: Estes had a conflict of interest.

> Ground II:  The testimony of petitioner's accomplice was not sufficiently corroborated to support the conviction.

> Ground III:  The state court erred by admitting evidence of prior crimes and bad acts.

> Ground IV:  The state court erred in instructing the jury.

See Dkt. # 1 at 4, 6, 7, and 9.

On October 6, 2015, respondent filed a response (Dkt. # 12), along with copies of the state court record (Dkt. # 13).  Respondent concedes, and the Court finds, that petitioner timely filed his federal habeas petition, see 28 U.S.C. § 2244(d)(1), and exhausted state remedies by presenting these claims to the OCCA in his direct appeal, see id. § 2254(b)(1)(A).  See Dkt. # 12 at 2.  Respondent asserts, however, that petitioner's request for habeas relief fails on the merits.  See Dkt. # 12.

## II.

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs this Court's review of petitioner's habeas claims.  See 28 U.S.C. § 2254.  Relief is only available under the AEDPA where the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  However, because the OCCA already adjudicated petitioner's claims, this Court may not grant habeas relief unless he demonstrates that the OCCA's ruling: (1) "resulted in a decision that was contrary to . . . clearly established Federal law as determined by Supreme

Court of the United States," 28 U.S.C. § 2254(d)(1);[2] (2) "resulted in a decision that . . . involved an unreasonable application of clearly established Federal law," id.; or (3) "resulted in a decision that was based on an unreasonable determination of the facts" in light of the record presented to the state court, id. at § 2254(d)(2).

"To determine whether a particular decision is 'contrary to' then-established law, a federal court must consider whether the decision 'applies a rule that contradicts [such] law' and how the decision 'confronts [the] set of facts' that were before the state court." Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (alterations in original) (quotations omitted). When the state court's decision "identifies the correct governing legal principle in existence at the time, a federal court must assess whether the decision 'unreasonably applies that principle to the facts of the prisoner's case." Id. (quotations omitted). Significantly, an "unreasonable application of" clearly established federal law under § 2254(d)(1) "must be objectively unreasonable, not merely wrong." White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (quotations omitted). "[E]ven clear error will not suffice." Id. Likewise, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 558 U.S. 290, 301 (2010). The Court must presume the correctness of the OCCA's factual findings unless petitioner rebuts that presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

---

[2] As used in § 2254(d)(1), the phrase "clearly established Federal law" means "the governing legal principle or principles" stated in "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Lockyer v. Andrade, 538 U.S. 63, 71–72 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)); see also House v. Hatch, 527 F.3d 1010, 1015 (10th Cir. 2008) (explaining that "Supreme Court holdings—the exclusive touchstone for clearly established federal law—must be construed narrowly and consist only of something akin to on-point holdings").

Essentially, the standards set forth in § 2254 are designed to be "difficult to meet," Harrington v. Richter, 562 U.S. 86, 102 (2011), and require federal habeas courts to give state court decisions the "benefit of the doubt." Woodford v. Visciotti, 537 U.S. 19, 24 (2002). A state prisoner ultimately "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103.

## 1. Conflict of Interest (Ground I)

Petitioner first argues, as he did on direct appeal, that Estes had a conflict of interest. See Dkt. # 1 at 4. Petitioner points out that Estes "negotiated [Schroeder's] plea agreement," and "Schroeder testified against [him] at trial." Id. Based on the record, the Court liberally construes these arguments as a challenge to petitioner's conflict waiver.

"The Sixth Amendment right to effective assistance of counsel encompasses the correlative right to representation that is free from conflicts of interest." Hale v. Gibson, 227 F.3d 1298, 1312 (10th Cir. 2000) (quoting Selsor v. Kaiser, 81 F.3d 1492, 1496–97 (10th Cir.1996)). The "typical conflict of interest case giving rise to a claim of ineffective assistance of counsel involves multiple representation of co-defendants at a single trial." Id. Conflicts "may also arise where a lawyer's self-interest is adverse to the interest of his client." Id.

"[A] court may avoid a conflict of interest problem by securing a waiver of a defendant's right to conflict-free representation." United States v. Gallegos, 108 F.3d 1272, 1281 (10th Cir. 1997). See also United States v. Burney, 756 F.2d 787, 791 n. 2 (10th Cir. 1985) ("A defendant may waive the right to assistance of counsel unhindered by conflicts of interest."). However, the waiver must be a "voluntary, . . . knowing, [and] intelligent act 'done with sufficient awareness of the

relevant circumstances and likely consequences.'" Gallegos, 108 F.2d at 1281 (quoting Brady v. United States, 397 U.S. 742, 748 (1970)). See also Edens v. Hannigan, 87 F.3d 1109, 1118 (10th Cir. 1996) (denying habeas relief after determining petitioner's conflict waiver was knowing, voluntary, and intelligent). "The trial court bears the duty to ensure that the defendant understands the nature of the conflicts and their effects on counsel's representation before waiving them." Martinez v. Zavaras, 330 F.3d 1259, 1262 (10th Cir. 2003).

Relying on Gallegos, the OCCA found that petitioner "knowingly and voluntarily waived his right to conflict-free counsel and that the trial court took appropriate measures to evaluate the possible risks before accepting that waiver." Dkt. # 12-4 at 2. Having reviewed the record, the Court agrees.

The state court conducted a hearing to discuss any potential conflicts, and how petitioner might perceive those conflicts, before the trial began. Estes indicated it may reflect badly on petitioner that Estes negotiated a favorable deal for Schroeder while petitioner faced life imprisonment. See Dkt. # 13-1 at 124. Davis further opined that Estes may not press Schroeder as zealously on cross examination, and noted that Estes may have selected a tougher jury based on his past relationship with Schroeder. Id. at 125-126.

Following this discussion, the state court recessed to allow petitioner to discuss the matter with Davis, as independent counsel. Id. at 127. Petitioner then elected to waive the conflict. Id. The state court engaged in the following exchange with petitioner:

Q: Okay. Mr. Mills, you understand what's going on today.

A: Yes, sir.

Q: All right. Now you're accused of a felony offense, Use of a Vehicle in Discharge of a Weapon, carrying a possible punishment of two years to life; is that correct?

A: Yes, sir.

Q: You understand what's been presented to me today is that there was a co-defendant, a Mr. Danny Schroeder, who was originally charged, along with you, with the same offense; do you understand that?

A: Yes, sir.

. . .

Q: And Mr. Davis has assigned Mr. Burl Estes, your current attorney, to represent you in the matter. But Mr. Estes apparently represented a co-defendant; do you understand that?

A: Yes, sir.

Q: Now, the co-defendant has pled. He has received a sentence. I believe he's out on probation; . . . And he's apparently going to testify, and the offer of proof has been made as to what he's going to testify about; do you understand that?

A: Yes.

Q: You understand you have a right to have an attorney, independent counsel free to represent you; do you understand that?

A: Yes, sir.

Q: You understand that if Mr. Estes has a conflict today, the options . . . would be to declare a mistrial, order substitution of counsel, if one is available and comfortable representing you, stepping in at this time, or you're free to continue on with Mr. Estes. Do you understand that?

A: Yes, sir.

. . .

Q: All right. Do you understand the options available to the court?

A: Yes, sir.

. . .

Q: What is your desire in this matter?

A: Just do it.

. . .

Q: Have Mr. Estes represent you?

A: Yes, sir.

Dkt. # 13-1 at 127-30.

Petitioner does not explain how, in light of the above, he failed to understand the import of the waiver, nor does the petition even acknowledge that he waived the conflict. See Dkt. # 1 at 4. On this record, the OCCA's conclusion that petitioner voluntarily and intelligently waived any conflict with Estes does not violate federal law. The Court will therefore deny habeas relief on Ground I.

## 2. Accomplice Testimony (Ground II)

In Ground II, petitioner argues that there was insufficient evidence to corroborate the testimony of his accomplice, Schroeder. See Dkt. # 1 at 6. This argument appears to challenge the OCCA's application of a state law requiring the corroboration of accomplice testimony. Relying on Glaze v. State, 565 P.2d 710, 712 (Okla. Crim. App. 1977), and similar cases, the OCCA found that Schroeder's testimony was corroborated by the hearsay evidence about a neighbor who witnessed the shooting. See Dkt. # 12-4 at 2. The OCCA noted the evidence was not met with an objection and could therefore be considered along with other testimony in the record. Id. at 2-3.

As respondent correctly points out, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67–68 (1991). Unlike Oklahoma law, "[f]ederal law does not require independent corroboration of accomplice testimony." Watson v. Howard, No. 04-6074, 2005 WL 375940, * 6 (10th Cir. Feb. 17,

2005) (unpublished).[3]  See also Foster v. Ward, 182 F.3d 1177, 1193 (10th Cir. 1999) (noting the "Constitution does not prohibit convictions based primarily on accomplice testimony.") (quotations omitted); United States v. Torres, 53 F.3d 1129, 1140 (10th Cir. 1995) ("[A] jury may convict based on the uncorroborated testimony of a co-conspirator.").  Federal habeas courts are therefore not required to "inquire into whether there was sufficient evidence to support the verdict absent [the accomplice's] testimony."  Watson v. Howard, 2005 WL 375940, * 6.  See also Foster, 182 F.3d at 1193 ("As there is no constitutional requirement that [petitioner's] testimony be corroborated, we need not address his claimed deprivation of protection under [Oklahoma] law.").

To the extent petitioner challenges the sufficiency of the evidence more generally, he must demonstrate that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  The elements of the crime at issue are: (i) using a vehicle (ii) to facilitate the intentional discharge of a firearm; (iii) in conscious disregard for the safety of any person.  See OKAL. STAT. tit. 21, § 652(B).  Schroeder testified that the petitioner and another man, Jones, directed Schroeder to drive to a particular residence so that they could speak with a friend.  See Dkt. # 13-1 at 184.  Schroeder further testified that when he arrived at the residence, petitioner and Jones started shooting assault rifles.  Id. at 184-85.  According to Schroeder, "they both looked back and asked each other if either one of them hit anything, and kind of giggled about it."  Id. at 186.  The investigating officers testified they observed bullet holes and casings in front of the Surrett residence, and that two different weapons were used.

---

[3]     The Court cites this decision, and other unpublished decisions herein, as persuasive authority.  See FED. R. APP. P. 32.1(a); 10th Cir. R. 32.1(A).

Id. at 137, 151-52.  One officer further testified that Mrs. Surrett identified petitioner as a suspect on the night of the shooting.  Id. at 140.

The jury accepted this testimony, which clearly establishes each element of the crime.  See Foster, 182 F.3d at 1193 ("So long as the testimony is not incredible on its face and is otherwise capable of establishing guilt beyond a reasonable doubt, it remains solely within the province of the jury to determine the credibility of each witness.") (quotations omitted).  The Court therefore finds that the evidence was sufficient to support the conviction under federal law, and Ground II fails.

**3.      Evidence of Other Crimes and Bad Acts (Ground III)**

Petitioner next argues that the state court erred by admitting evidence of other crimes and bad acts.  See Dkt. # 1 at 7.  He contends Schroeder should not have been allowed to testify that petitioner "stayed with [Schroeder] . . . after he got out jail."  Dkt. # 13-1 at 183.  Petitioner further argues Schroeder inappropriately testified that petitioner "started shooting again" near a stop sign after leaving the Surrett residence.  Id. at 187.  According to petitioner, any charges stemming from the second shooting were dismissed at the preliminary hearing.  Id. at 7.  The OCCA reviewed the admission of the evidence for plain error, as petitioner's counsel did not object at trial, and found that it did not impact the verdict.  See Dkt. # 12-4 at 3.  The OCCA further found that evidence of the second  shooting was inextricably intertwined with the charged offense.  Id.

Federal habeas courts "will not disturb a state court's admission of evidence of prior crimes, wrongs or acts unless the probative value of such evidence is so greatly outweighed by the prejudice flowing from its admission that the admission denies [the petitioner] due process of law."  Knighton v. Mullin, 293 F.3d 1165, 1171 (10th Cir. 2002) (quoting Duvall v. Reynolds, 139 F.3d 768, 787 (10th Cir. 1998)).  The Court must determine whether, when "considered in light of the entire

record, [the admission of other crimes evidence] resulted in a fundamentally unfair trial." Id. "[B]ecause a fundamental-fairness analysis is not subject to clearly definable legal elements," the federal habeas court must "tread gingerly" and exercise "considerable self-restraint." Duckett v. Mullin, 306 F.3d 982, 999 (10th Cir. 2002) (quoting United States v. Rivera, 900 F.2d 1462, 1477 (10th Cir. 1990) (en banc)).

Applying the above standard, the Court finds that admission of the challenged evidence did not render the trial fundamentally unfair. Schroeder made the comment about jail in passing to establish the parties' acquaintance, and the state presented unrelated, direct evidence of petitioner's guilt. See Smallwood v. Gibson, 191 F.3d 1257, 1277 (10th Cir. 1999) (finding that because there was direct evidence, admission of prior bad acts did not make the defendant's trial "fundamentally unfair"). Further, Schroeder's testimony about a second shooting incident did not imply petitioner had a propensity for drive-by shootings. In this context, the testimony demonstrated that petitioner continued to recklessly fire shots from the vehicle on the night in question, which is highly probative of his guilt. The Court will therefore deny habeas corpus relief on Ground III.

**4.      Jury Instructions (Ground IV)**

Petitioner finally argues that the state court violated his due process rights by failing to properly instruct the jury. See Dkt. # 1 at 9. He contends that he was entitled to cautionary instructions regarding: (1) the applicability of the 85% Rule;[4] (2) a defendant's right not to testify;

_____

[4]      The 85% Rule refers to OKAL. STAT. tit. 21, § 12.1, which provides that a defendant convicted of certain enumerated crimes must serve 85% of each sentence before becoming eligible for parole. Using a vehicle to discharge a firearm is an enumerated offense. OKLA. STAT. tit. 21, § 13.1(5). Oklahoma law requires trial courts to instruct jurors on the 85% Rule prior to sentencing. See Anderson v. State, 130 P.3d 273, 283 (Okla. Crim. App. 2006).

and (3) uncorroborated accomplice testimony. Id. The OCCA found that the trial court did not commit plain error by omitting those instructions. See Dkt. # 12-4 at 4, 6. The summary opinion cited case law holding that trial counsel must request an adverse-inference instruction, and that an omitted accomplice instruction is harmless where sufficient corroborating evidence is otherwise present in the record. Id. at 4. The OCCA also concluded that the omission of an instruction on the 85% Rule did not impact the outcome of petitioner's case. Id. at 6.

Federal law requires a parole-eligibility instruction only in capital cases where the defendant is alleged to be a continuing threat. Simmons v. South Carolina, 512 U.S. 154, 161-62 (1994); Ramdass v. Angelone, 530 U.S. 156, 166 (2000). Federal law does not require an instruction on the 85% Rule. Id. Accordingly, the Tenth Circuit has repeatedly held that habeas relief is unavailable in cases where an Oklahoma state court omits that instruction. See Gardner v. Jones, No. 08-6211, 2009 WL 485048, * 4 (10th Cir. Feb. 27, 2009) (unpublished) ("The trial court's failure to instruct on the 85 percent rule did not render [petitioner's] trial fundamentally unfair in a constitutional sense"); Taylor v. Parker, No. 08-6211, 2008 WL 1886057, * 3 (10th Cir. April 29, 2008) (unpublished) ("We are convinced that the refusal to instruct on the eighty-five percent Rule did not render [petitioner's] trial so fundamentally unfair as to cause a denial of a fair trial in a constitutional sense."); Parker v. Sirmons, No. 10-5024, 2010 WL 2562680, * 2 (10th Cir. June 28, 2010) (unpublished) (same).

Petitioner's argument regarding the omitted adverse-inference instruction fails for similar reasons. Federal law "requires that [a] criminal trial judge must give a 'no-adverse-inference' jury instruction when requested by a defendant to do so." Carter v. Kentucky, 450 U.S. 288, 300 (1981) (emphasis added). There is nothing in the record indicating that petitioner's counsel requested an

instruction regarding his right not to testify. <u>See</u> Dkt. # 13-4 at 76-94; <u>see also</u> Dkt. # 13-1 at 200. Therefore, the state court's omission of the adverse-inference instruction did not violate clearly established federal law.

As to the final argument, the Tenth Circuit has held that a petitioner's "burden in attacking his conviction and sentence based on an erroneous omission of [an accomplice instruction] . . . is a heavy one—'even greater than the showing required to establish plain error on direct appeal." <u>Foster v. Ward</u>, 182 F.3d 1177, 1193 (10th Cir. 1999) (quotations omitted). Such error is not reviewable unless it was so "fundamentally unfair as to deprive petitioner of a fair trial and to due process of law." <u>Nguyen v. Reynolds</u>, 131 F.3d 1340, 1357 (10th Cir. 1997) (quotations omitted).

Having reviewed the record, the Court agrees with the OCCA that petitioner received a fair trial despite the absence of an instruction regarding accomplice testimony. Schroeder's testimony was consistent with both the physical evidence and the account of the unidentified neighbor, and Estes pressed him about what, if anything, the state promised in exchange for his cooperation. <u>See</u> Dkt. # 13-1 at 182-90. The state court also instructed the jury to weigh the credibility of each witness considering the relation of the witness to the parties as well as the witness' bias, candor, memory, and demeanor. <u>See</u> Dkt. # 13-4 at 85; <u>see also</u> <u>Foster</u>, 182 F.3d at 1193 (suggesting credibility instruction can help offset prejudice caused by the absence of an accomplice-testimony instruction). Therefore, the Court finds that the OCCA properly declined to reverse the conviction based on the omitted jury instructions, and Petitioner is not entitled to habeas relief.

### III.

Habeas Corpus Rule 11 requires "[t]he district court [to] . . . issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate may only issue "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When the district court rejects the merits of petitioner's constitutional claims, he must make this showing by "demonstrat[ing] that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). For the reasons discussed above, petitioner has not made the requisite showing on any of his claims. The Court therefore denies a certificate of appealability.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The Clerk of Court shall note the substitution of Raymond Byrd, Warden, in place of Robert Patton, Director, as party respondent.

2. The petition for a writ of habeas corpus (Dkt. # 1) is **denied.**

3. A certificate of appealability is **denied**.

4. A separate judgment will be entered herewith.

**DATED** this 23rd day of July, 2018.